

# THE ATTORNEY GENERAL

## OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

AUSTIN 11, TEXAS

August 22, 1952

Hon. C. H. Cavness          Opinion V-1507
State Auditor
Austin, Texas               Re: Legality of including "G.I."
                                (Teague Bill) students in
                                calculating the apportion-
                                ment of public junior col-
                                lege appropriations, and
                                the legality of admitting
                                nonresident "G.I." (Teague
                                Bill) students at resident
Dear Sir:                       tuition rates.

        We refer to your recent request addressed to
this office which reads as follows:

        "1. We shall appreciate your advising
        us if in your opinion funds appropriated in
        Article IV, House Bill 426 of the 52nd Legis-
        lature, may be apportioned and paid to the
        Public Junior Colleges enumerated therein for
        semester hours being taken during the coming
        1952-1953 school year by students who are
        receiving education allowance benefits from
        the Federal Government as provided in H. R
        7656, 82nd Congress, Second Session. That
        Act is known as 'Veterans Readjustment As-
        sistance Act of 1952.'

        "We quote herewith another question on
        the new G.I. Bill from one of the State Col-
        leges (Senior) and ask your opinion directly
        on it - of course all State Colleges will be
        affected. This is:

            'A question has arisen concerning
            the provisions of the new G.I. Bill
            for education of Korean veterans. Is
            it your interpretation that an out of
            state student who is a Korean veteran
            will pay the out of state tuition if
            he elects to attend a Texas State Sup-
            ported Institution? A student whose

home is in another state has made
application for admission to Texas
College of Arts and Industries at
the beginning of the coming fall
semester and has objected to the
payment of an out-of-state fee on
the ground that he is a Korean vet-
eran.'"

Article IV of House Bill 426, Acts 52nd Leg.,
R.S. 1951, ch. 499, p. 1228, at page 1443, provides
lump sum appropriations for the biennium (September 1,
1951, through August 31, 1953), and for the apportionment
thereof to the public junior colleges listed therein which
qualify under its provisions.  Section 4 of Article IV,
supra, provides as follows:

"The funds herein appropriated shall
be disbursed to the Public Junior Colleges
which qualify to receive it on the basis
of . . .($189) per capita for each full-
time student equivalent enrolled in approved
courses of study, or proportionately if the
total appropriation made by this Article
should be insufficient to provide the full
. . . ($189) per capita.

"The term 'full-time student equiva-
lent' as herein used shall be defined as
a student taking fifteen (15) semester
hours of approved courses; and the number
of full-time student equivalents for any
Junior College to be benefitted by this
Article shall be determined by dividing
by fifteen (15) the total number of semes-
ter hours of approved courses carried by
all eligible students as of November 1st in
each fiscal year, except that not more than
eighteen (18) semester hours being carried
on that date by any individual student shall
be counted, nor shall the semester hours
carried by any student in excess of a total
of sixty-six (66) semester credit hours
earned in a Public Junior College be
counted; and provided further that the
count of semester hours shall not include
those being carried by any students who
have not made timely compliance with the
requirements of Section 3 (a) above, nor

those being carried by any student (except Vocational Rehabilitants) whose
tuition and fee expenses are paid by the
United States Government." (Emphasis
added throughout.)

Section 3 referred to in the quoted Section 4
reads as follows:

"It is further provided that to be
eligible for and to receive a proportionate share of this appropriation a Public
Junior College shall:

"(a) Prior to November 1st of each year,
collect matriculation and other session
fees not less than the amounts provided for
by law for State-supported institutions of
higher learning (for full-time and for part-
time students from each enrolled student)
$\underline{/}$Art. 2654c, V.C.S.$\underline{7}$, except this shall not
apply to any student who may be exempt from
the payment of such fees by State law $\underline{/}$Art.
2654b-1, V.C.S.$\underline{7}$; . . ."

Thus, in this statutory formula for proportionate disbursement of the junior college appropriations,
it is provided that the count of semester hours required
therein shall not include those semester hours carried
by any students whose tuition and fee expenses are paid
by the United States Government, except vocational rehabilitants.

In 1943 Section 3 of Article 2654b-1, V.C.S.,
was enacted. This statute exempted from the payment of
tuition at our public institutions of collegiate rank
veterans of the armed services of World War II, as
designated therein, who were citizens of Texas, honorably discharged, and who had not been discharged on
personal request or because over the age of thirty-
eight years. But in 1945, after the passage of Public
Law 346, 78th Congress, bestowing Federal educational
benefits on certain veterans of the armed services of
World War II, Section 4 of Article 2654b-1, V.C.S.,
was enacted, which provides in part as follows:

"Sec. 4. The exemption from the payment
of dues, fees and charges as provided hereinabove in Section 1 and Section 3 of this

Article /Art. 2654b-1, V.C.S./ shall not
apply to or include honorably discharged
members of such United States Armed Forces,
or other persons hereinabove named, who are
eligible for education or training benefits
provided by the United States Government
under Public Law No. 16, 78th Congress,
/vocational rehabilitants/, or amendments
thereto, or under Public Law No. 346, 78th
Congress /G.I. Bill/ or amendments thereto,
or under any other Federal legislation that
may be in force at the time of registration
in the college concerned of such ex-service
man or woman. As to all ex-service men or
women as defined in this section, the govern-
ing boards of each of the several institu-
tions of collegiate rank, supported in whole
or in part by public funds appropriated from
the State Treasury, are hereby authorized
to enter into contracts with the United
States Government, or any of its agencies,
to furnish instruction to such ex-service
men and women at a tuition rate which covers
the estimated cost of such instruction or,
in the alternative, at a tuition rate of
. . . ($100.00) a semester, as may be deter-
mined by the governing board of the institu-
tion concerned; . . ."

See also paragraphs 2 and 4 of Section 1 of
Article 2654c, as amended in 1947 by House Bill 507, Acts
50th Leg., R.S., 1947, ch. 218, p. 389, each containing
the following provision:

". . . provided that the nonresident
registration fee may within the discretion
of said governing board be charged the
United States Government for veterans en-
rolled under the provisions of any Federal
law and regulations authorizing educationl
or training benefits for said veterans,
. . ."

Section 4 of Article 2654b-1 specifically con-
cerns veterans entitled to "G.I." Bill (P.L. 346) educa-
tional benefits, and the manifest purpose of that law was
to allow the several public institutions of collegiate
rank in Texas to realize tuition payments from the Govern-
ment on such veterans. Att'y Gen. Op. V-688 (1948).

Therefore, it seems reasonable to suppose that the Legislature, when it incorporated in the junior college appropriation (Art. IV of H. B. 426, supra) that provision prohibiting the inclusion of semester hours of veterans whose education is paid for by the Government, had in mind only the educational benefits afforded veterans under Public Law 346 or some other law providing for similar tuition payments by the Government. Tuition payments under Public Law 346 are governed by the following provisions (see 38 U.S.C.A. 1951 pocket part, p. 248, Veterans Regulations):

"The administrator shall pay to the educational or training institution . . . for each person enrolled in full time or part time course of education or training, the customary cost of tuition, and such laboratory, library, health, infirmary, and other similar fees as are customarily charged, and may pay for books, supplies, equipment, and other necessary expenses, exclusive of board, lodging, other living expenses, and travel, as are generally required for the successful pursuit and completion of the course by other students in the institution: Provided, That in no event shall such payments, with respect to any person, exceed $500 for an ordinary school year unless the veteran elects to have such customary charges paid in excess of such limitation, in which event there shall be charged against his period of eligibility the proportion of an ordinary school year which such excess bears to $500: . . . And provided further, That any institution may apply to the Administrator for an adjustment of tuition and the Administrator, if he finds that the customary tuition charges are insufficient to permit the institution to furnish education or training to eligible veterans, or inadequate compensation therefor, may provide for the payment of such fair and reasonable compensation as will not exceed the estimated cost of teaching personnel and supplies for instruction; and may in like manner readjust such payments from time to time. . . . in the computation of such estimated cost of teaching personnel and supplies for instruction in the case of any nonprofit educational institution, no reduction shall be made by reason of any payments to such institution from State or municipal or other non-Federal public

funds, or from private endowments or gifts or other income from nonpublic sources . . ."

In addition to the above payments which are made directly to the educational institution, the Government also pays a subsistence allowance to the student.

We think that in arriving at the true meaning and purpose of that provision in Article IV of H. B. 426, supra, which excludes from the semester hours count those hours taken by students whose tuition is paid by the United States Government, it is necessary to consider in pari materia therewith Section 4 of Article 2654b-1. When that provision is studied in its proper relation to Article 2654b-1, it becomes readily apparent that the legislative intent was not to provide for a $189 per capita State apportionment or appropriation to junior colleges for any full-time student equivalent whose cost of instruction was being paid directly to the college by the United States Government. The Legislature had in mind, we think, that the junior college would receive tuition benefits on veteran students from the Government under Public Laws 346 recited in Article 2654b-1, in such amounts as would make it unnecessary for the State to support junior colleges with State appropriations toward the education of such veterans. In this the Legislature reasoned correctly because, we are informed, the junior colleges have realized more on tuitions paid by the Government on its Public Law 346 veteran students than the $189 per capita appropriated by the State to assist in the education of full-time student equivalents receiving no tuition aid from the Government.

However, with respect to veterans eligible for Government educational benefits under the Teague Bill (Public Law 550, 82nd Congress, 2d Sess.; H. R. 7656, to be codified 38 U.S.C.A., note foll. chap. 12) approved July 16, 1952, we find that Public Law 550 provides only for payments directly to the eligible veteran and limits the amount of tuition which the institution may charge to the established tuition which the institution requires similarly circumstanced nonveterans to pay.

Section 231 of H. R. 7656, supra, provides in part:

"(a) the Administrator shall pay <u>to</u> <u>each eligible veteran</u> who is pursuing a <u>program of education or training</u> under this

title, and who applies therefor, an education and training allowance to meet <u>in part</u> the expenses of his subsistence, tuition, fees, supplies, books and equipment."

Section 232 provides in part as follows:

"(a) The education and training allow-ance of an eligible veteran who is pursuing a program of education or training in an educational institution and is not entitled to receive an education and training allowance under subsection (b), (c), (d), (e), or (f) shall be computed as follows:

"(1) If such program is pursued on a full-time basis, such allowance shall be computed at the rate of $110 per month, if the veteran has no dependent, or at the rate of $135 per month, if he has one dependent, or at the rate of $160 per month if he has more than one dependent. ..."

Section 234 provides as follows:

"The Administrator may, if he finds that an institution has <u>charged or received from any eligible veteran any amount in excess of the established charges for tuition and fees which the institution requires similarly circumstanced nonveterans enrolled in the same course to pay, disapprove such educational institution for the enrollment of any veteran not already enrolled therein,</u> except that, in the case of a tax-supported public educational institution which does not have established charges for tuition and fees which it requires nonveteran residents to pay, such institution may charge and receive from each eligible veteran who is a resident an amount equal to the estimated cost of teaching personnel and supplies for instruction attributable to such veteran, but in no event to exceed the rate of $10 per month for a full-time course."

Tuitions payable by nonveteran residents enrolled in Texas public institutions of collegiate rank for fall and spring semester are fixed by statute, likewise the minimum-maximum rates within which college

boards may yearly establish tuitions for summer ses-
sions. Pars. 1 and 4, Sec. 1, Art. 2654c, V.C.S. The
minimum-maximum rates for tuition which may be charged
nonresident nonveteran students, within which college
boards may establish a fixed rate yearly, are also
prescribed by law. Pars. 2 and 4, Sec. 1, Art. 2654c.
Therefore, the tuition of nonveteran students, resident
and nonresident, are "established charges" (established
by statute with respect to residents, or established
within limits fixed in the statute with respect to non-
residents) within the meaning of the above underscored
provision in Section 234, H. R. 7656, supra. It follows
that the tuition chargeable to veterans, residents or
nonresidents, who apply and enroll for benefits under
Public Law 550 (Teague Bill) may not be greater than the
college legally charges nonveteran students, residents
or nonresidents, respectively.

Under Article IV of House Bill 426, supra, our
public junior colleges realize a state appropriation on
each formula-determined nonveteran student, resident or
nonresident, in the amount of $189. May the provisions in
that appropriation bill be construed to deprive such col-
leges of that $189 state aid on veteran students, resi-
dent or nonresident, who enroll under application for
Teague Bill benefits, and are subject to the same tuition
charges established for nonveteran students, resident and
nonresident, without doing violence to the underlying
purpose of the junior college appropriation bill herein-
before discussed? We think not.

The clear purpose of the appropriation made in
the junior college bill was to grant state aid of $189
or to the extent made availabe, on each formula-determined
student whose tuition charges must be limited to those
fixed in or established under provisions of Article 2654c,
V.C.S.

Therefore, it is the opinion of this office
that the funds appropriated in Article IV of House Bill
426, supra, may be apportioned and paid to the junior
colleges enumerated therein on semester hours being taken
during the 1952-1953 school year by veteran students re-
ceiving educational benefits from the United States Govern-
ment as provided in the Teague Bill, Public Law 550, 82nd
Congress, 2nd Session.

In connection with your second question, it has been pointed out that Article 2654c governs in the matter of tuition that may be charged veteran applicants, resident and nonresident, who are eligible for education benefits under the Teague Bill, Public Law 550, supra. We find no provision in Article 2654c or other State law which would authorize the governing boards of our public institutions of collegiate rank to admit at resident tuition rates nonresident veterans of any war or national emergency, unless they as children of armed service personnel stationed in Texas come within the benefits of subsection (6) of Section 1, Article 2654c, V.C.S. Att'y Gen. Op. V-1502 (1952).

Therefore, a nonresident student who is a Korean veteran must pay the nonresident fees established for non-veteran nonresident students if he elects to attend a Texas State-supported institution of collegiate rank.

## SUMMARY

Funds appropriated by Article IV of House Bill 426, Acts 52nd Leg. 1951, ch. 499, pp. 1228, 1443, may be apportioned and paid to the junior colleges enumerated therein for semester hours being taken during the 1952-1953 school year by veterans receiving educational benefits provided in Public Law 550, 82nd Congress, 2nd Session.

A nonresident student who is a Korean veteran and receiving payment for tuition and subsistence under P. L. 550, 82nd Congress, 2nd Session, will pay the nonresident tuition established for nonresident nonveteran students, under the provisions of Article 2654c, V.C.S., if he elects to attend a Texas State-supported institution of collegiate rank, unless the veteran is the child of armed service personnel stationed in Texas and thereby comes within the benefits of subsection (6) of Section 1, Article 2654c, supra.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

J. C. Davis, Jr.
County Affairs Division

Mary K. Wall
Reviewing Assistant

By *Chester E. Ollison*

Chester E. Ollison
Assistant

Charles D. Mathews
First Assistant